E6A7YAGP1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4                  v.                         14 Cr. 272 (JSR)

 5   TAKAYUKI YAGAMI,

 6                  Defendant.

 7   ------------------------------x

 8                                             June 10, 2014
                                               12:30 p.m.
 9

10   Before:

11                      HON. JED S. RAKOFF
                                             District Judge
12

13                          APPEARANCES

14   PREET BHARARA
          United States Attorney for the
15        Southern District of New York
     BY:  BRIAN YOUNG
16        CAROL SIPPERLY
          MICHAEL KOENIG
17        Assistant United States Attorneys

18   MATTHEW LEVINE
          Attorney for Defendant
19
     ALSO PRESENT:  JEFFREY WEEKS, F.B.I.
20

21

22

23

24

25
```

E6A7YAGP1

1          (In open court)

2          THE INTERPRETER:  The interpreter would like to

3     comment that she's been requested to stand by rather than

4     interpret everything.  Is that all right with your Honor?

5          THE COURT:  That's fine, yes.

6          (Case called)

7          MR. YOUNG:  Good afternoon, your Honor.  Brian Young

8     and Carol Sipperly from the Department of Justice, Criminal

9     Division, Michael Koenig, from the Antitrust Division of the

10    Department of Justice, an Special Agent Jeffrey Weeks from the

11    F.B.I.

12         DEPUTY CLERK:  Can you spell Sipperly, please.

13         MS. SIPPERLY:  S-i-p-p-e-r-l-y.

14         DEPUTY CLERK:  Thank you.

15         MR. LEVINE:  Good afternoon, your Honor.  Matthew

16    Levine for the defendant Takayuki Yagami.  Mr. Yagami is here.

17    The interpreter is next to me.  And with my is my law clerk

18    Joanna Cohen.  She is not yet admitted, but has passed the bar

19    and asks for your permission to sit at counsel table.

20         THE COURT:  She has passed the bar but she still wants

21    to go forward?  You know, there are a lot of good investment

22    banking opportunities now.  All right.  Very good.

23         MR. LEVINE:  Thank you, your Honor.

24         THE COURT:  All right.  My understanding is that the

25    defendant wishes to enter a plea to a superseding information,

E6A7YAGP1

1       is that correct?

2                       MR. LEVINE:  That is correct, your Honor.

3                       THE COURT:  We will place the defendant under oath.

4                       (Defendant sworn)

5                       THE COURT:  All right.  Mr. Yagami, let me first

6       advise you that because you are under oath, anything you say

7       that is knowingly false could subject you to punishment for

8       perjury or obstruction of justice or the making of false

9       statements.  Do you understand?

10                      THE DEFENDANT:  I did not fully understand.

11                      THE COURT:  No.  So, we need to have either

12      simultaneous translation, or we are going to postpone this

13      proceeding.  That should have been set up in advance.

14                      All right?  Have you translated what I just said, or

15      would you like me to repeat it?

16                      THE INTERPRETER:  Yes, your Honor, I have.

17                      THE COURT:  All right.  So, I'm going to say it again

18      anyway and have it translated simultaneously.

19                      So, let me advise you that because you are under oath,

20      anything you say that is knowingly false could subject you to

21      punishment for perjury, or obstruction of justice, or the

22      making of false statements.  Do you understand?

23                      THE DEFENDANT:  Yes, Honor.

24                      THE COURT:  Very good.  So, your full name is Takayuki

25      Yagami?

E6A7YAGP1

1              THE DEFENDANT:  Yes, Honor.

2              THE COURT:  And I take it you do read and write a

3    little bit of English; is that fair?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  But your primary language is Japanese?

6              THE DEFENDANT:  Yes, Honor.

7              THE COURT:  And where are you from?

8              THE DEFENDANT:  I'm from Japan, Honor.

9              THE COURT:  And are you an American citizen or just a

10   Japanese citizen?

11             THE DEFENDANT:  I am Japanese citizen.

12             THE COURT:  How old are you?

13             THE DEFENDANT:  I'm 42 years old.

14             THE COURT:  And how far did you go in school?

15             THE DEFENDANT:  I went to the university.  That was

16   the highest.  I graduated from the university.

17             THE COURT:  Bring that microphone a little bit closer

18   to you.

19             THE DEFENDANT:  I graduated from university.

20             THE COURT:  OK.

21             THE DEFENDANT:  That's the highest that I have.

22             THE COURT:  All right.  Have you ever been treated by

23   a psychiatrist or psychologist?

24             THE DEFENDANT:  Never I have, Honor.  Never.

25             THE COURT:  OK.  Have you ever been hospitalized for

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E6A7YAGP1

1   any mental illness?

2            THE DEFENDANT:  Never, I haven't, Honor.

3            THE COURT:  Have you ever been treated or hospitalized

4   for alcoholism?

5            THE DEFENDANT:  Never have I, Honor.

6            THE COURT:  Have you ever been treated or hospitalized

7   for narcotics addiction?

8            THE DEFENDANT:  Never, Honor.

9            THE COURT:  Are you currently under the care of a

10  physician for any reason?

11           THE DEFENDANT:  I'm not under any -- any --

12           THE COURT:  Why don't you say it in Japanese to the

13  interpreter, and she can interpret it for me.

14           THE DEFENDANT:  No, I'm not receiving any treatment.

15           THE COURT:  And are you taking any medication of any

16  kind?

17           THE DEFENDANT:  No, Honor.

18           THE COURT:  OK.  And in the last 24 hours have you

19  taken any alcohol?

20           THE DEFENDANT:  No, Honor.

21           THE COURT:  In the last 24 hours have you taken any

22  narcotic?

23           THE DEFENDANT:  No.

24           THE COURT:  Is your mind clear now?

25           THE DEFENDANT:  Never.

E6A7YAGP1

1          THE COURT:  Is your mind clear today?

2          THE DEFENDANT:  Yes, I am clear, Honor.

3          THE COURT:  On the basis of defendant's responses to

4    my questions, and my observations of his demeanor, I find that

5    he is fully competent to enter an informed plea at this time.

6          Now, Mr. Yagami, you have the right to be represented

7    by counsel at every stage of these proceedings.  Do you

8    understand that?

9          THE DEFENDANT:  Yes, I do, honor.

10          THE COURT:  And if at any time you can't afford

11    counsel, the court will appoint one to represent you free of

12    charge throughout the proceedings.  Do you understand that?

13          THE DEFENDANT:  Yes, I do, Honor.

14          THE COURT:  You are represented by Mr. Levine.  Are

15    you satisfied with his representation?

16          THE DEFENDANT:  Yes, I am.

17          THE COURT:  Have you had a full opportunity to discuss

18    this matter with him?

19          THE DEFENDANT:  Yes, Honor.

20          THE COURT:  And have you told him everything you know

21    about this matter?

22          THE DEFENDANT:  Yes, Honor.

23          THE COURT:  Now, was there a previous indictment or

24    not in this matter?

25          MR. YOUNG:  There was an indictment, your Honor.  Mr.

E6A7YAGP1

1    Yagami was not indicted in the matter.

2              THE COURT:  OK.  Yes, I've seen the indictment against

3    the others; I meant against him.

4              So, Mr. Yagami, the government proposes to charge you

5    with what is called an information -- actually what they call a

6    superseding information.  Why is it a superseding information?

7              MR. YOUNG:  Your Honor, Mr. Yagami was identified in

8    the underlying indictment as Trader R.

9              THE COURT:  That doesn't make this a superseding

10   information; it's just an information.  A superseding

11   information would be superseding some previous charge against

12   him.  You just told me he hasn't been charged, correct?

13             MR. YOUNG:  He has not been charged, your Honor.

14             THE COURT:  So, although I like the fact that you know

15   how to spell superseding -- and very few people do, they

16   usually spell s-u-p-e-r-c-e-d-i-n-g, which is totally wrong and

17   shows their complete ignorance of Latin; and you got it right,

18   s-u-p-e-r-s-e-d-i-n-g -- the only trouble is it's not a

19   superseding information, it's just an information.  True?

20             MR. YOUNG:  I think that's true, your Honor.  My

21   understanding of the procedural posture of the case was that

22   we're supposed to style it a superseding information because it

23   referenced the underlying indictment against Mr. Robson and the

24   other two defendants.

25             THE COURT:  Well, I don't know what they do in places

E6A7YAGP1

1    like Washington D.C., but that's not the way it's done up here,

2    but I will leave it; it's immaterial.

3          So, my question for you, Mr. Yagami, is was this read

4    to you, this superseding information, in Japanese?

5          THE DEFENDANT:  No, Honor.

6          THE COURT:  You read it in English?

7          THE DEFENDANT:  Yes, I did.

8          MR. LEVINE:  Your Honor, we went over it very

9    carefully several times.  I have every confidence that Mr.

10   Yagami understood every part of it.  We went over it slowly.

11   He understood it well.  I have discussed this matter with him

12   many times.  I have gone over the previous charging documents

13   in the indictment with him, as well as --

14         THE COURT:  Well, let me --I think we're going to read

15   it now and have it translated right now --

16         MR. LEVINE:  Thank you, your Honor.

17         THE COURT:  -- as we read it.

18         So Count One, United States Attorney charges:

19         1.  From at least in or about May 2006 through at

20   least in or about early 2011, in the Southern District of New

21   York and elsewhere, Takayuki Yagami, together with Paul Robson,

22   Paul Thompson, and Tetsuya Motomora, and others known and

23   unknown, did knowingly combine, conspire, confederate and agree

24   to commit certain offenses against the United States, that is,

25   A, to devise and intend to devise a scheme and artifice to

E6A7YAGP1

1  defraud, and to obtain money and property by means of

2  materially false and fraudulent pretenses, representations and

3  promises.

4          THE INTERPRETER:  Excuse me, your Honor.  I'm sorry,

5  if you could go slightly slower.

6          THE COURT:  Yes, I'm sorry.  Do you have a copy in

7  front of you?

8          THE INTERPRETER:  I do now, yes.

9          THE COURT:  So, why don't you just translate it right,

10  unless you want it read here in open court.

11          MR. YOUNG:  Whatever is easiest.

12          THE COURT:  No, defense counsel.  Do you want it read

13  in open court, or shall we just have the translator translate

14  it for him privately?

15          MR. LEVINE:  I would be comfortable with just having

16  the translator read it.

17          THE COURT:  So tell me when you're through.

18          (Pause)

19          MR. LEVINE:  Thank you, your Honor.

20          THE INTERPRETER:  It's easier if it was actually read

21  at the same time I looked at it.

22          THE COURT:  Sorry?

23          THE INTERPRETER:  It would be easier if it was read at

24  the same time that I look at it, if it was read aloud, if that

25  would be all right.

E6A7YAGP1

1          MR. LEVINE:  I have no objection either way, your

2     Honor.  Whatever your Honor thinks is best.

3          THE COURT:  I'm going to disappear for ten minutes,

4     and when I come back it better have been translated.

5          (Continued on next page)

E6AAAYAGP2                         Plea

```
 1              (Recess)

 2              THE COURT:  Are you through?

 3              THE INTERPRETER:  I have "B" through "E" on the last

 4   page.

 5              THE COURT:  All right.  Go ahead.

 6              (Pause)

 7              MR. LEVINE:  Thank you, your Honor.

 8              could I just state for the record, I've asked

 9   Mr. Yagami if after having this translated whether his

10   understanding was the same as when we spoke about it yesterday

11   and previously and he confirmed to me it was exactly the same.

12              THE COURT:  Very good.  Thank you very much.

13              So, Mr. Yagami, the government can only file this

14   information with your permission because under the Constitution

15   you have a right to have this charge presented to a grand jury

16   which is a group of 16 to 23 citizens who would meet and

17   consider evidence and could only bring this charge against you

18   if they found there was probable cause to believe that you had

19   committed this crime.  Do you understand that?

20              THE DEFENDANT:  Yes, I do, Honor.

21              THE COURT:  Are you prepared to give up that right and

22   to have the government file this directly against you?

23              THE DEFENDANT:  Yes, I am, Honor.

24              THE COURT:  Was there a written waiver?

25              MR. YOUNG:  Yes, your Honor.
```

E6AAAYAGP2                    Plea

1          THE COURT:  Thank you.  Yes, here it is.

2          No.  Actually, I don't have a written --

3          MR. YOUNG:  We have an advanced copy.  I have the

4    original here.

5          THE COURT:  Very good.

6          (Pause)

7          THE COURT:  Mr. Yagami, did you in order to indicate

8    your agreement, sign a written waiver of your right to have

9    this presented by indictment before a grand jury and a written

10   consent to have this information filed?  Did you sign that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Was that written to you in Japanese?

13         THE DEFENDANT:  It was written in English.

14         THE COURT:  It was read to him in English but not in

15   Japanese, correct?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  All right.  I'm read it again.  You can

18   have it translated as we go along.

19         The above named defendant was accused of violating

20   Title 18 U.S.C. Section 1349, being advised of the nature of

21   charge and of his rights hereby waives in open court

22   prosecution by indictment and consents that the proceeding may

23   be by information instead by indictment.

24         You understood that, yes?

25         THE DEFENDANT:  Yes, I did.

E6AAAYAGP2                    Plea

1          THE COURT:  And you signed it earlier today, yes?

2          THE DEFENDANT:  Yes, I did.

3          THE COURT:  All right.  I'll give that waiver to my

4     courtroom deputy to file and we'll accept for filing the

5     superseding information.

6          Mr. Yagami, you know this charge has been, even though

7     this charge has been filed against you you could still plead

8     not guilty and could go to trial I but I understand you wish to

9     plead guilty; is that right?

10         THE DEFENDANT:  Yes, it is.

11         THE COURT:  Before I can accept any plea of guilty I

12    need to make certain, among other things, that you understand

13    the rights that you will be giving up if you plead guilty.  So,

14    I want to go over with you now the rights that you will be

15    giving up; do you understand that?

16         THE DEFENDANT:  Yes, I do your Honor.

17         THE COURT:  First you have a right to a speedy and a

18    public trial by a jury on the charge against you.  Do you

19    understand that?

20         THE DEFENDANT:  Yes, I do, Honor.

21         THE COURT:  Second, if there were a trial you would be

22    presumed innocent and the government would be required to prove

23    your guilt beyond a reasonable doubt before you could be

24    convicted of this charge; do you understand that?

25         THE DEFENDANT:  Yes, I do, your Honor.

E6AAAYAGP2                     Plea

1              THE COURT:  Third, at the trial you would have the

2       right to be represented by counsel.  And once again, if at any

3       time you could not afford counsel, the Court would provide one

4       for you free of charge throughout the trial and all other

5       proceedings.  Do you understand that?

6              THE DEFENDANT:  Yes, I do, Honor.

7              THE COURT:  Fourth, at the trial you would have the

8       right to see and hear all the witnesses and other evidence

9       against you and your attorney could cross-examine the

10      government's witnesses and could object to the Government's

11      Exhibits and could offer evidence on your own behalf if you so

12      desired.  You could have subpoenas issued to compel the

13      attendance of witnesses and other evidence on your behalf.  Do

14      you understand all of that?

15             THE DEFENDANT:  Yes, I do honor.

16             THE COURT:  And fifth, at the trial you would the

17      right to testify if you wanted to but no one could force you to

18      testify if you did not want to and no suggestion of guilt could

19      be drawn against you if you chose not to testify.  Do you

20      understand that?

21             THE DEFENDANT:  Yes, I do, Honor.

22             THE COURT:  And finally, even if you are convicted you

23      would have the right to appeal your conviction.  Do you

24      understand that?

25             THE DEFENDANT:  Yes, I do, Honor.

E6AAAYAGP2                    Plea

 1           THE COURT:  Now, do you understand that if you plead
 2   guilty you will be giving up each and every one of the rights
 3   we just discussed; do you understand that?
 4           THE DEFENDANT:  Yes, I do, Honor.
 5           THE COURT:  Very good.  Now, the charge here, the
 6   conspiracy charge carries a maximum sentence of 30 years
 7   imprisonment, plus up to five years supervised release to
 8   follow any imprisonment, plus a maximum fine of a million
 9   dollars.  Do you understand those are the maximum punishments
10   you face if you enter a plea of guilty to this charge?
11           THE DEFENDANT:  Yes, I do, Honor.
12           THE COURT:  Also, do you understand that if I were to
13   impose a term of supervised release and you were to violate any
14   of the conditions of supervised release, that violation in and
15   of itself could subject you to still more imprisonment going
16   even beyond the term of supervised release; do you understand
17   that?
18           THE DEFENDANT:  Yes, I do, Honor.
19           THE COURT:  Now, at this point in time I have
20   absolutely no idea what sentence I will impose if you plead
21   guilty, but I will take account of the sentencing guidelines
22   which are certain laws that recommend a range at which the
23   Court may sentence you.  I will take account of various factors
24   that are set forth in Section 3553(A) of Title 18, the general
25   section describing all the functions of sentencing and I will

E6AAAYAGP2                    Plea

1   take account of any agreement that you have reached with the

2   government.  Do you understand all that?

3              THE DEFENDANT:  Yes, I do, Honor.

4              THE COURT:  And in that connection, I have been

5   furnished with a letter agreement which we'll now mark as Court

6   Exhibit One to today's proceeding and it takes the form of a

7   letter from the government to your counsel.  Does someone have

8   the original?  It's the original that we will mark as Court

9   Exhibit One and I am worried that the answer to the question

10  that I am about to put, was this read to you in Japanese?

11             THE DEFENDANT:  Just in English, Honor, so.

12             THE COURT:  So, I can tell from your responses to my

13  questions that while you understand English it's, certainly,

14  not as perfect as one would expect of someone who is a native

15  of English speakers, so that the very first question today and

16  that I put to you was one that had to be translated before you

17  understood it.  Now, this agreement there is an open question

18  as to whether it really is written in English or just legalese

19  but it's, certainly, not something that someone for whom

20  English is a second being language could necessarily readily

21  understand.

22             So, I wonder, counsel, whether we don't have to have

23  this read to the defendant in Japanese.  I also wonder why

24  counsel didn't think about this a long time ago

25             MR. LEVINE:  Your Honor, your latter question is a

E6AAAYAGP2                    Plea

good one and that probably would have been the preferable

course.  I would just add to answer the first question which is

that Mr. Yagami has been interviewed numerous, numerous times

by these people here as well as other lawyers always in

English.  I have been discussing with him the nature of this

agreement for a long time.  I have gone over the concepts that

are contained in with him many, many times.  I have been

representing him for over six months now.  I have gone over

this specific agreement with him line-by-line several times as

recently as yesterday and I have every confidence that he

understands it.  I literally read each sentence with him in

English and made sure he understood it, so I have great

confidence.

          THE COURT:  You don't think that was prohibited by the

cruel and unusual punishment --

          MR. LEVINE:  It may have been.  And I just would say I

think he's just a little nervous because this is his first time

before a federal district judge and his first time pleading

guilty to a criminal offense and I think he was just a little

put off by your first question but I do think he is fully

comprehending everything before and everything now.

          THE COURT:  Well, let me ask.  Mr. Yagami, confirming

what your counsel just said, did you go over this agreement

line-by-line?

          THE DEFENDANT:  Yes, I did.

E6AAAYAGP2                    Plea

1              THE COURT:  And are you confident you understood this

2     agreement?

3              THE DEFENDANT:  Yes, I am confident.

4              THE COURT:  And you signed it earlier today, right?

5              THE DEFENDANT:  Yes, I did, Honor.

6              THE COURT:  And when you signed it it was because you

7     are confident you understood it and you wished to agree to it,

8     yes?

9              THE DEFENDANT:  Yes, I do, Honor.

10             THE COURT:  And you knew you would be bound by its

11    terms?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  We'll move ahead then.

14             Now, you should understand, Mr. Yagami, that this

15    agreement while it's binding between you and the government is

16    not binding on me.  For example, this agreement says that if

17    you rendered substantial assistance to the government they will

18    make a motion for a reduced sentence in your case.  You

19    understand that, yes?

20             THE DEFENDANT:  Yes, I do, Honor.

21             THE COURT:  But I may grant a motion or I may deny

22    that motion.  Even if I grant that motion I may reduce your

23    sentence a little.  I may reduce it a lot.  I may not reduce it

24    at all.  Do you understand all that?

25             THE DEFENDANT:  Yes, I do, honor.

E6AAAYAGP2                     Plea

1          THE COURT:  All right.  Very good.  On the other hand,

2     because this agreement is binding between you and the

3     government you have agreed not to appeal or otherwise attack

4     your sentence in this case.  Do you understand that?

5          THE DEFENDANT:  Yes, I do, Honor.

6          THE COURT:  So, let me ask the government, other than

7     this agreement, have any other promises been made to Mr. Yagami

8     in connection with this plea?

9          MR. YOUNG:  No, your Honor.

10         THE COURT:  Does defense counsel confirm that is

11    correct.

12         MR. LEVINE:  I confirm your Honor.

13         THE COURT:  And, Mr. Yagami, do you confirm that as

14    well?

15         THE DEFENDANT:  I confirm, Honor.

16         THE COURT:  Mr. Yagami, other than the government, has

17    anyone else made any kind of promises to you or offered you any

18    inducement to get you to plead guilty this afternoon?

19         THE DEFENDANT:  No, honor.

20         THE COURT:  Has anyone threatened you or coerced you

21    to get you to plead guilty?

22         THE DEFENDANT:  No, Honor.

23         THE COURT:  Does the government represent that if this

24    case were to go to trial it would through competent evidence

25    prove every element of this crime beyond a reasonable doubt?

E6AAAYAGP2                    Plea

1            MR. YOUNG:  Yes, your Honor, we that representation.

2            THE COURT:  Does defense counsel know of any valid

3    defense that would likely prevail at trial or any other reason

4    why its client should not plead guilty?

5            MR. LEVINE:  I have no reason, your Honor.

6            THE COURT:  Then, Mr. Yagami, tell me in your own

7    words what it is you did that makes you guilty of this crime.

8            MR. LEVINE:  Your Honor, if I may I have an allocution

9    for him.

10           THE COURT:  Yes.  What a surprise.  Go ahead.

11           MR. LEVINE:  It is in English and if your Honor has

12   any questions when he's done, obviously, we would welcome them.

13           THE COURT:  Very good.

14           THE DEFENDANT:  I worked as money market trader for

15   Rabobank from, approximately, August 2000 through January 2012.

16   During some or all of that period or all of that time period I

17   worked on a regular basis for Paul Robson, Paul Thompson and

18   Tetsuya Motomura.  Also, during some or all of that period I

19   was supervised directly by Paul Thompson or Tetsuya Motomura.

20   Beginning in August or about May 2006 I was provided the

21   opportunity to conduct propriety trading for Rabobank.  Much of

22   that trading I engaged involved financial instruments tied to

23   the London Interbank Offered Rate, also know as, LIBOR.  I

24   frequently engaged in trading involving instruments tied to the

25   Japanese Yen LIBOR rate.  During my employment at Rabobank I

E6AAAYAGP2                    Plea

1    understood that the Yen LIBOR rate was an interest rate which

2    attempted to accurately describe the rate at which Rabobank

3    borrowed yen on a regular, on a particular day.

4          I also understood Rabobank was a member of a panel of

5    banks that submitted rates to the British Bankers Association

6    each day in order to establish the LIBOR rate or barriers

7    currencies including yen.

8          I also understood that someone at Rabobank first in

9    London and later in Utrecht would submit the Rabobank LIBOR

10   rate each day to Thompson Reuters in New York by means of an

11   electronic wire transmission.  In connection with trading and

12   financial instruments tied to LIBOR that I and others and

13   Rabobank conducted, I knew that the profit or loss that flowed

14   from this trading was directly affected by the relevant LIBOR

15   rate on a particular day.

16         Further, I knew Rabobank regularly settled trades with

17   certain counter-parties located in the United States.  It was

18   foreseeable to me that the settlement forces involving those

19   U.S. counter-parties for trades involving instruments that set

20   an interest rates referring LIBOR involved international wire

21   transfers beginning or ending within the United States

22   including some of my own trades.

23         Beginning in or about September of 2007, beginning in

24   or about the spring of 2007, I knowingly and intentionally

25   joined a force by Mr. Robson, Mr. Thompson and Mr. Motomura to

E6AAAYAGP2                    Plea

1    attempt to manipulate the rate at which LIBOR is set.  The

2    method by which we attempted to manipulate the LIBOR rate was

3    causing Rabobank to submit LIBOR rates to the BPA that were

4    intended solely to benefit trading positions, one or more was

5    held and not to accurately express Rabobank's yen borrowing

6    rate.  On some occasion I requested that Rabobank submit one or

7    more LIBOR rates intended to benefit my own trading positions.

8    On other occasions I requested Rabobank submit one or more

9    LIBOR rates intended to benefit trading positions held by

10   Mr. Thompson, Mr. Motomura or both.

11           I was also aware that Mr. Robson submitted rates on

12   behalf of Rabobank that were intended solely to benefit

13   Mr. Robson's own trading position.

14           At the time I joined the Air Force of Mr. Robson,

15   Mr. Thompson and Mr. Motomura attempts to manipulate the LIBOR

16   rates I knew that what I was doing was wrong.  Nor did I ever

17   disclose to Rabobank trading counter-parties these attempts to

18   manipulate the LIBOR rate.

19           I deeply regret having made this terrible mistake.

20           THE COURT:  So, when you were manipulating the LIBOR

21   rate, it was to your advantage and the advantage of your

22   co-conspirators but you knew it would be to the disadvantage of

23   others including institutions in the United States, yes?

24           THE DEFENDANT:  Yes.

25           THE COURT:  All right.  And the government represents

E6AAAYAGP2                    Plea

1   that those included financial institutions and deposits which

2   were insured by the federal deposit the --

3           MR. YOUNG:  Some of the institutions were FDIC

4   insured, your Honor.

5           THE COURT:  Very good.  All right.  I meant to mention

6   earlier, Mr. Yagami, that by pleading guilty and entering into

7   this agreement you have also agreed to the forfeiture provision

8   set forth in the information; you agree, yes?

9           THE DEFENDANT:  Yes, I did.

10          THE COURT:  Also, I mentioned that I have no idea what

11  sentence I will impose.  I wanted to add to that that therefore

12  if anyone has made any kind of prediction or representation or

13  a promise to you of what your sentence will be in this case,

14  that person could be wrong and you cannot rely on any such

15  prediction; do you understand that?

16          THE DEFENDANT:  Yes, I do, Honor.

17          THE COURT:  All right.  Before I ask the defendant to

18  formally enter his plea, is there anything else either counsel

19  wishes the Court to inquire about?

20          MR. YOUNG:  Nothing from the government's side, your

21  Honor.

22          MR. LEVINE:  Nothing from the defense, your Honor.

23          THE COURT:  So, Mr. Yagami, in light of everything

24  we've now discussed, how do you now plead to this superseding

25  information which is designated S1 14 CR 272, guilty or not

E6AAAYAGP2                      Plea

1    guilty?

2              THE DEFENDANT:  Guilty, your Honor.

3              THE COURT:  Are you pleading guilty voluntarily?

4              THE DEFENDANT:  Yes, I do, your Honor.

5              THE COURT:  Because the defendant's acknowledged his

6    guilt as charged, because he has shown that he understands his

7    rights, because his plea is entered knowingly and voluntarily

8    and is supported by an independent basis in fact containing

9    each of the essential elements of the offense, I accept his

10   plea and adjudge him guilty of the conspiracy charged set forth

11   as Count One of the superseding information S1 14 CR 272.

12             Now, the next stage of this, Mr. Yagami, is that you

13   will be given a reasonable amount of time to demonstrate a

14   substantial assistance to the government and then at about

15   three months before sentencing date that we're about to set,

16   the probation office will begin preparing what's called a

17   presentence report which will assist the Court in determining

18   sentence.  As part of that you will be interviewed by the

19   probation office.  You can have your counsel present.  Under my

20   practices you have to personally answer any and all questions

21   put to you by the probation officer.  Do you understand that?

22             THE DEFENDANT:  Yes, I do, your Honor.

23             THE COURT:  Then after that report is in draft form

24   you and your counsel also government counsel have a chance to

25   review it and to offer suggestions, corrections and additions

E6AAAYAGP2                    Plea

1    to the probation officer who will then prepare the report in

2    final to come to me.  Independent of that counsel are hereby

3    given leave to submit to the Court in writing any and all

4    motions and other materials related to any aspect of sentence

5    provided they are submitted no later than one week before

6    sentence.

7            So, do counsel have a suggested sentencing date?

8            MR. YOUNG:  Your Honor, I think both parties would --

9    I know the Court has a three year rule.  And what we're going

10   to ask the Court to do is to set that date as close to three

11   years as we can.  And the reason that we're asking for that,

12   judge, is because some of these defendants are overseas.  And

13   what I would hate to see happen to Mr. Yagami is that the case

14   isn't resolved by the time the sentence is here.

15           THE COURT:  Yes.  Well, first of all, you should keep

16   in mind that there's always a year to move for reduction of

17   sentence even after he's sentenced in the case of cooperators.

18           Secondly, and more importantly he's just admitted to a

19   series of crimes.  He needs to be sentenced for that and not to

20   let this go on for an uncertain period of years and years.

21           On the other hand, I agree with you that this case

22   qualifies for the three year, the full three years that is the

23   maximum I allow.  So we will set the sentence down for,

24   assuming it is a weekday, June 10, 2017.  I assume counsel are

25   available at 4 p.m.  So, June 9, 2017 at 4 p.m.

E6AAAYAGP2                    Plea

1          Now, if his cooperation is completed before then,

2    either side can apply to have the sentencing earlier.  But it's

3    not going to go under any sort of circumstances later than the

4    date we just set.  That's the absolute farthest out I am

5    prepared to go.  So just bear that in mind.  Because there is

6    the international aspects of this thing may well delay things.

7          All right.  Now, in terms of bail, my understanding is

8    that the parties have agreed to a bail package of a $500,000

9    bond secured by $100,000 cash, plus that the defendant is

10   permitted to maintain his residence with his family in Hong

11   Kong and to travel to Japan for personal reasons, to the United

12   States for cooperation purposes and to China, Japan, Singapore,

13   Vietnam, Thailand, Indonesia and the Philippines for business

14   purposes; is that correct?

15          MR. YOUNG:  That's correct, your Honor.

16          MR. LEVINE:  Yes, your Honor.

17          THE COURT:  All right.  So that's agreeable to the

18   Court.

19          All right.  Anything else we need to take up today?

20          MR. YOUNG:  Yes, your Honor.  I'd like to hand up a

21   final copy of our information.

22          THE COURT:  Yes.

23          (Pause)

24          MR. YOUNG:  Nothing further from the government, your

25   Honor.

E6AAAYAGP2                    Plea

1          THE COURT:  Anything else?

2          MR. LEVINE:  Nothing further from the defense.

3          THE COURT:  All right.  Very good.  Thanks very much.

4          MR. LEVINE:  Your Honor, one thing could I have 24

5    hours to get that money to the clerk because I have to do a

6    wire transfer?

7          THE COURT:  Yes.

8          MR. LEVINE:  Thank you.

9                    (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25